STATE OF VERMONT
SUPERIOR COURT - ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| Lidstone Setback Waiver (Appl. #10-04) | } | Docket No. 130-8-10 Vtec |
| Lidstone Variance/Waiver (Appl. #10-01) | } | Docket No. 152-9-10 Vtec |
| Lidstone NOV | } | Docket No. 212-12-10 Vtec |
| Town of Tinmouth v. Lidstone | } | Docket No. 10-1-11 Vtec |
| Lidstone Setback/Variance (2nd Application) | } | Docket No. 178-12-11 Vtec |
| Lidstone Variance (Front Deck and Garage) | } | Docket No. 33-3-12 Vtec |

**Decision on the Merits**

For the purpose of putting these six related matters into perspective, the Court provides the following procedural history overview. Much of this history is repeated within the Court's Findings of Fact which follow.

Philip Lidstone (Mr. Lidstone or Applicant) is the owner of the property located at 86 West Shore Drive in Tinmouth, Vermont. The property is located within the Lakeshore District in the Town of Tinmouth, Vermont (the Town). Prior to 2007, the property housed a vacation cottage that pre-dated the Town's zoning regulations. To the extent the cottage failed to meet setback requirements, it was grandfathered as a pre-existing non-conforming structure. In June of 2007, Applicant applied for and was granted a permit to replace the existing cottage with a 30X40 foot, one and one-half story, year-round residence. The permit was conditioned on Applicant relocating the cottage to a designated location on the opposite side of West Shore Drive. Applicant was also required to refrain from using the cottage as a residence.

In 2008, Applicant relocated the original cottage to a location different than that specified in the permit. The new structure that he built in its place is two stories tall and has an unpermitted attached garage that does not meet the setback requirements. The new residence also has an unpermitted second floor porch and walkway that encroached on the lakeside and side yard setbacks. In early 2009, Applicant obtained a permit amendment increasing the size of the structure to two stories.

After receiving the initial permit amendment, Applicant applied in early 2009 for a second amendment that would allow his as-built garage and lakeside porch. It is these two structures that form the heart of the six matters now before the Court. The Town's Zoning Board of Adjustment (ZBA) denied the application. Applicant did not appeal the denial. We

1

note that Applicant's many and varied subsequent proposals to alter the structures—all denied by the ZBA and all on appeal before us now—resulted at least in part from the need to address significant safety concerns posed by the proximity of the unpermitted garage to the road.

In 2010, Applicant applied for a different permit amendment proposing to add windows to his garage and to relocate the cottage to its originally permitted location. The ZBA denied the application and Applicant appealed the decision to the Environmental Division. This Court remanded the case back to the ZBA for further findings. On remand, the ZBA again denied the application. Applicant's appeal of the post-remand denial is currently before the court in Docket Number 152-9-10 Vtec.

Applicant then applied for a setback waiver and variance and to convert the garage into an open-sided carport. Following the ZBA's denial of this application (currently on appeal to this Court in Docket Number 130-8-10 Vtec), the Zoning Administrator issued Applicant a Notice of Violation (NOV) alleging that the porch and garage violate setback requirements and were built without a permit or a waiver. The NOV was upheld by the ZBA. Applicant's further appeal of the NOV is currently before the Court in Docket Number 212-12-10 Vtec. In connection with the NOV, the Town filed a Municipal Enforcement Action against Applicant, which is currently before the court in Docket Number 10-1-11 Vtec.

During the proceedings before the Environmental Division relating to the NOV and the enforcement action, the ZBA separately denied additional applications of Applicant seeking setback waivers and variances for his deck and garage. Both denials are currently before this Court in Docket Numbers 178-12-11 Vtec and 33-3-12 Vtec.

The Court now addresses all six pending actions in a coordinated fashion in accordance with Vermont Rule of Environmental Court Proceedings (V.R.E.C.P.) 2(b). In connection with the coordinated proceedings, the Court conducted a site visit on August 1, 2012 followed by a two-day merits hearing. The hearing was held at the Rutland District/Family Court. Appearing at the site visit and hearing were Attorney Christopher Corsones, Esq. representing Mr. Lidstone, and Attorney James Caroll, Esq. representing the Town of Tinmouth.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

## Findings of Fact

1. The Town first adopted the Tinmouth Town Plan (Town Plan) in 1974. The Town Plan has been updated and amended multiple times since then; the most current version was adopted on September 24, 2007.

2. The Town has duly adopted Zoning Regulations amended October 13, 2005 and November 2010 (hereafter referenced as the 2005 Regulations and the 2010 Regulations). As noted throughout this decision, some of the matters before this Court are governed by the 2005 Regulations, while others are governed by the 2010 Regulations.

3. Applicant purchased 86 West Shore Drive, Tinmouth, Vermont (the Property) in 1984. The Property abuts Chipman Lake.

4. The Lake Shore Drive community is made up of modest lakeside homes.

5. The Property is approximately 2.7 acres in size and is located in the Town's Lakeshore District as described in the 2005 and 2010 Regulations §§ 201 and 202.

6. Applicant taught math and science in Danby, Vermont from 1966 to 1983 and then at Mill River, Vermont from 1983 to 1999.

7. Mr. and Mrs. Lidstone married in 2000, and when Mrs. Lidstone retired they wanted a retirement home at the Property.

8. The Lidstones sketched out many drawings for a new home, and after picking one they liked, Mr. Lidstone went to the Town offices to get a permit.

9. Mr. Lidstone did not know the process for getting a permit for the new home, so he asked the town clerk, Gail Faller, for assistance. Mr. Lidstone completed the application for a zoning permit with Ms. Faller's guidance.

10. The first application for a zoning permit was filed June 21, 2007; it sought authorization to replace an existing cottage with a 40X30 foot, one and one-half story year round home.

11. Mr. Lidstone's hand drawn sketch submitted with the 2007 application depicts the new home approximately 30 feet from the edge of the traveled way of West Shore Drive. The sketch also shows a "future garage." The existing cottage is shown to be relocated to the opposite side of West Shore Drive and was intended as an accessory structure for non-residential uses.

3

12. The location of the east wall of the former cottage matches the east wall of the replacement house. A cement pier was retained in the southeast corner and was used for the new structure.

13. Due to financial constraints, Mr. Lidstone did not apply for a permit for the garage; however, he knew that he and his wife wanted a garage at some future time.

14. The application was approved with conditions relating to the potential need for a septic permit for a pump tank. The permit required that the existing cottage be relocated to the other side of West Shore Drive and not used for residential purposes.

15. Pursuant to the both versions of the Regulations, the Lake Shore Zoning District has a front yard setback of 25 feet and a lakeside setback of 50 feet (2005 Regulations, Article 5; 2010 Regulations § 501) and the front yard setback is measured from a point 25 feet from the center line of a roadway (§ 902 of both the 2005 and 2010 Regulations).

16. The western corner of Applicant's pre-existing non-conforming cottage was set back 28.5 feet from the edge of the traveled way of West Shore Drive.

17. The traveled way of West Shore Drive varies from approximately 10 to 12 feet wide.

18. The posted speed limit on West Shore Drive is 10 miles per hour. One of the landowners along West Shore Drive is contracted to care for and maintain West Shore Drive, and he posted the speed limit.

19. West Shore Drive is a shared right of way running over private property. Residents and guests use the road to access more than two dozen residential lots.

20. In November 2007 the Lidstones began building their replacement home. By the end of September 2008 the house and garage were fully built.

21. The southeast corner of both the original cottage and the replacement home are in the same location, and thus located the same distance from Chipman Lake.

22. The Lidstones constructed a porch on the lake-side of the replacement house.

23. The porch is attached to the second floor (the main floor of the house) and it is approximately 8 feet deep and 30 feet wide.

24. The porch is supported by 4 posts and 2X6 floor joists which are attached to the house.

25. The porch has a roof and ceiling. The sides of the porch are constructed as removable screens.

4

26. The Lidstones constructed an elevated wooden walkway and deck on the north side of the replacement home. The walkway-deck structure has no walls or roof and is approximately 30 feet long by 5 feet wide and provides access into the replacement home from West Shore Drive.

27. The Zoning Administrator, Gail Fallar, (ZA) drove past the Lidstone property several times during the period of construction and never stopped or notified the Lidstones that there was a violation.

28. The Lidstones have lived year-round at the Property since 2008.

29. In October 2008, the ZA first indicated to Mr. Lidstone that there was a violation relating to his construction of the house and garage.

30. On or about October 10, 2008, the ZA issued a Notice of Violation (NOV) to Applicant for construction of his unpermitted garage.

31. In November 2008, Applicant appealed this 2008 NOV to the ZBA, arguing in part that the ZA had verbally approved the garage and that Applicant justifiably relied on the alleged verbal approval. The ZBA denied Applicant's NOV appeal in its decision dated January 15, 2009, concluding that Applicant violated his 2007 zoning permit by constructing his attached garage. Applicant did not appeal this ZBA decision.

32. On or about January 22, 2009, Mr. Lidstone applied for—and the ZA granted—an amendment to his zoning permit modifying the original approval of a one and one-half story home to approval of the two story home. This permit amendment did not approve of or permit the garage.

33. Applicant next requested a waiver on February 9, 2009. The request included "four options," one of which was simply to waive requirements for the house/garage and cottage in their existing positions and dimensions. The other three proposals all appear to involve rerouting the road. The ZBA denied the waiver in a decision dated April 27, 2009. As part of its denial, the ZBA concluded that 2005 Regulations § 902 – Front Yard Setback did apply to Applicant's garage. Applicant did not appeal this ZBA decision.

34. Applicant next filed a series of applications with the Town offering different modifications to his as-built attached garage, as well as modifications to West Shore Drive. These applications seek waivers and variances from the front yard and lakeshore setbacks and attempt to gain Town approval for his garage and porch.

5

35. On January 25, 2010 Applicant applied (#10-01) for a variance and waiver, on the basis of a proposal to move the cottage to the location originally permitted and to address safety concerns by installing windows in the garage and rerouting the road farther from the garage to create a front yard setback of approximately 18 feet from the centerline of West Shore Drive. The ZBA denied this application on March 25, 2010. Applicant appealed the denial to us in Docket 65-4-10. After we remanded the matter to the ZBA for more findings, the ZBA again denied the application on July 29, 2010. Applicant's appeal of this denial is now before us as **Docket No. 152-9-10 Vtec**.

36. On April 26, 2010, Applicant applied (#10-04) for a waiver on the basis of a proposal to remove the first floor garage walls, transforming it into a carport without any modification to the front yard setback of 9 feet from the centerline of West Shore Drive. The ZBA denied this application on July 3, 2010. Applicant's appeal of this denial is now before us as **Docket No. 130-8-10 Vtec**.

37. On October 26, 2010, the ZA issued Applicant an NOV for the garage's setback violations and lack of permit. Applicant appealed the NOV to the ZBA, which upheld the NOV in a decision on December 4, 2010. Applicant's appeal of the NOV is now before us as **Docket No. 212-12-10 Vtec**.

38. On December 23, 2010, Applicant filed a motion to stay demolition of the garage with this Court; we eventually granted the motion to stay the demolition of the attached garage and ordered the parties to enter into mediation.

39. In the meantime, on January 25, 2011 the Town filed a Complaint for Enforcement concerning the non-compliant attached garage. That matter is before us as **Docket No. 10-1-11 Vtec**.

40. On October 25, 2011, Applicant filed two more applications for waiver or variance, with the proposals including rerouting West Shore Drive and renovating the garage so that it is shorter. The applications also seek a waiver of the lakeshore setback to gain approval of the lakeside covered porch. The ZBA denied the covered porch application alone on November 17, 2011 and denied the garage waiver and variance request with its proposed road rerouting on February 20, 2012. Applicant's appeals of these denials are now before us as **Docket Nos. 178-12-11** and **33-3-12 Vtec** respectively.

41. The 2011 applications propose to shorten the existing garage by 4 feet and relocate West Shore Drive to the west to create a new setback of 29 feet between the western edge of the traveled way of the relocated West Shore Drive and the eastern side of the shortened garage.

42. As part of the proposal to relocate West Shore Drive, Applicant also proposes to again relocate the cottage to maintain a 54 foot setback from the center of the relocated road, 30.7 feet from the south side setback and 26.3 feet from the rear property line. The original front and rear decks of the cottage are proposed to be removed due to their deteriorating condition and to maintain setback compliance.

43. Mr. Lidstone's proposed relocation of West Shore Drive would occur primarily within his own property, however, a small section of relocated road would run over the property abutting the Lidstones to the south owned by Mr. Gibbons. Mr. Gibbons did not participate before the Environmental Division. Mr. Lidstone testified that Mr. Gibbons does not object to moving West Shore Drive.

44. The proposal to relocate West Shore Drive includes the reinforcement of an area between the proposed commonly traveled roadway and the Lidstone garage; the gravel reinforcement would allow for fire or emergency truck access. This reinforced area would extend to within 15 feet of the shortened garage and would allow some grass to grow. The Town fire chief testified that the fire trucks cannot travel the new proposed road configuration without this area.

45. Several neighbors testified to their concerns relating to the new grades and cut work associated with the proposal to relocate West Shore Drive.

46. The Town's fire chief performed a site visit with a Town fire truck to review a preliminary road relocation proposal, however, the fire chief has not returned to review the final relocation proposal.

47. To allow access of emergency vehicles, the reinforced area must be plowed and kept free of snow.

48. No one will police whether normal traffic uses the reinforced area. Vehicles using the reinforced area will have to cross over the Lidstones' driveway.

49. The relocated road will be designed to maintain present runoff conditions and to prevent storm water runoff from flowing in a different direction than it presently does.

50. An existing 1,000 gallon septic tank is located to the east of the existing West Shore Drive. The relocated road will be moved up to and abut the septic tank.

51. A significant tree on the Lidstone property will have to be cut to accommodate the proposed relocated road.

52. The proposed relocated road would increase the radius or curvature of the road in the area at the north edge of the Lidstone property close to Ms. Munson's abutting property. This reconfiguration reduces sight distances between West Shore Drive and Ms. Munson's driveway.

## Conclusions of Law

We now consider the several legal theories which Applicant raises in the six related matters. We organize this decision by legal theory rather than by docket number because the dockets contain many repeating and overlapping issues. Applicant's Statements of Questions for the separate dockets contain a total of 22 questions, all of which we cover in this decision. All references to SOQs in this decision refer to those submitted by Applicant.

I.      **Verbal Approval for the for Garage** (Question 3.a and 3.b in SOQ for Docket No. 152-9-10 Vtec; Question 8 in SOQ for Docket No. 33-3-12 Vtec)

Applicant asserts that the ZA verbally approved the construction of his attached garage. He raises this issue in Docket No. 152-9-10 Vtec, which is an appeal of the ZBA's denial of Applicant's request for either a variance or waiver to the setback requirements for Applicant's existing two story garage, which was constructed without a permit. Applicant filed his application #10-01 with the Town on January 25, 2010.

Applicant previously raised the question of whether the ZA verbally approved an amendment to the 2007 zoning permit approving his garage when, in a 2008 appeal to the ZBA, he contested the ZA's October 10, 2008 NOV for construction of his unpermitted garage. In its January 15, 2009 decision, the ZBA concluded that the ZA had not verbally approved the garage, and it denied Applicant's appeal of the NOV. The ZBA's review of this issue included consideration of Applicant's self-written note purporting to document the ZA's verbal approval. Applicant did not appeal the ZBA's decision, and therefore, the January 15, 2009 decision is now final pursuant to 24 V.S.A. §4472(d) and cannot be collaterally attacked in the present matter. Thus, the ZBA decision that there was no verbal zoning permit amendment authorizing Applicant's garage is final and binding and is not reviewable by this Court. This

8

same ZBA decision found no valid estoppel theory. Thus, we answer questions numbered 3.a and 3.b[1] in Applicant's SOQ for Docket No. 152-9-10 Vtec in the negative.[2]

## II. Applicability of Setback Regulations to West Shore Drive (Question 4 in SOQ for Docket No. 33-3-12 Vtec)

Applicant argues that the front yard setback from West Shore Drive does not apply to his property, and specifically to his attached garage, in essence because the setback requirements of the 2005 Regulations do not apply to private rights-of-way. (Applicant's Tr. Legal Mem. at 15, filed Jul. 31, 2012). Applicant previously raised the applicability of the setback requirement in his February 9, 2009 appeal to the ZBA relating to Applicant's first request for a waiver for his as-built garage. In its April 27, 2009 decision, the ZBA concluded that 2005 Regulation § 902 – Front Yard Setback applies to Applicant's garage, and it denied the request for a waiver. Applicant did not appeal the ZBA's decision, which is now final pursuant to 24 V.S.A. §4472(d) and cannot be collaterally attacked in the present matters. Thus, the relevant 2005 Regulation setback requirements (and the relevant 2010 Regulation setback requirements) apply to Applicant's West Shore Drive property.[3]

## III. Waiver of Setback Requirements for the As-built Garage (Questions 1.a and 1.b in SOQ for Docket No. 152-9-10 Vtec; Questions 1, 2, 3, and 4 in SOQ for Docket No. 130-8-10 Vtec)

Applicant seeks a waiver pursuant to 2005 Regulation § 1104 (E) of the front yard setback, claiming that such a waiver would conform to the Town's Municipal Plan. Article V of the 2005 Regulations establishes a front yard setback within the Lakeshore district of 25 feet. Furthermore, 2005 Regulation Article IX, § 902 states that "[n]otwithstanding provisions for front yards elsewhere in these regulations; the front yard setback shall be measured starting 25

---

[1] SOQ 3.b. asks, "If such verbal conversation took place, did Applicant reasonably rely on such conversation in constructing his garage as it [is] presently constructed?"

[2] Applicant also raises the issues of a prior verbal approval and estoppel in Docket No. 33-3-12 Vtec, which is an appeal of the ZBA's February 20, 2012 decision denying a waiver and variance for a relocated West Shore Drive. SOQ 8 asks, "Has the Town of Tinmouth Administrative Officer previously approved the garage by verbal approval and, if so, did Appellant reasonably rely on that approval when constructing his garage?" (Question 8 of Applicant's Statement of Questions at 1-2, filed Mar. 29, 2012). Our answers to the negative apply equally to this matter.

[3] This issue is also raised in Docket No. 33-3-12 Vtec, which is an appeal of the ZBA's February 20, 2012 decision denying a waiver and variance for a relocated West Shore Drive. SOQ 4 asks, "Do the setback requirements contained in the Town of Tinmouth Zoning [B]ylaw[s] apply to distances of structures from private roads?" (Question 4 of Applicant's Statement of Questions at 1, filed Mar. 29, 2012). Our answer in the affirmative applies to this matter as well.

9

feet from the centerline of the roadway." Thus, the required front yard setback for Applicant's property is 50 feet from the centerline of West Shore Drive.

The northwest corner of the as-built garage is approximately 9 feet from the centerline of West Shore Drive. Applicant's pre-existing non-conforming cottage was set back 28.5 feet from the edge of the traveled way of West Shore Drive, or approximately 34.5 feet from the centerline. In two different applications (one proposing to add windows to the garage and the other proposing to convert the garage into an open-sided carport), Applicant seeks a waiver reducing the 50 foot front yard setback.

First, in Docket No. 152-9-10 Vtec, Applicant appeals the ZBA's denial of his request for a waiver to the setback requirements for his existing garage. Applicant filed his application #10-01 with the Town on January 25, 2010. As part of this application, Applicant proposed to add windows to the south and north walls of the garage in close proximity to West Shore Drive. Applicant suggests that windows will reduce the risks of accidents occurring when a car backs out of the garage into West Shore Drive. The footprint and location of the garage is not changed by this application; however, Applicant proposes to move West Shore Drive to the west to create a setback from the garage of approximately 12 feet to the edge of the traveled way. The traveled way of West Shore Drive is approximately 12 feet in width, resulting in approximately 6 feet between the edge of the traveled way and the center line of the road. Thus, Applicant seeks a waiver reducing the 50-foot setback from the center of West Shore Drive to 18 feet.

In a second matter, Docket No. 130-8-10 Vtec, Applicant appeals the July 3, 2010 ZBA decision denying Applicant's request for a setback waiver for his proposal to convert the garage into a carport. Application #10-04 was filed April 16, 2010. The carport modification will not alter the structure's non-compliance with the front yard setback requirements as the setback will remain at 9 feet from the centerline of West Shore Drive. Applicant proposes to convert the first floor of the as-built garage into a carport by removing the first floor walls while leaving the second floor in tact. Applicant suggests that his proposal addresses the safety concerns relating to West Shore Drive, i.e. vehicles backing out into West Shore Drive without the ability to see traffic or pedestrians and while on-coming vehicles cannot see the vehicle as it backs out of the garage.

These two applications are subject to the 2005 Regulations which at § 1104 (E) allows the grant of a waiver of setback when the waiver request is in conformance with the municipal plan

10

and state planning goals (24 V.S.A. § 4302) and when the waiver presents the minimum that will afford relief and will represent the least deviation possible from the 2005 Regulations.

Applicant requests after-the-fact waivers for a garage that he built without a permit. The requested reductions of the front yard 50 foot setback to 9 or 18 feet are significant and not minimal relief or the least deviation possible. Applicant's lot totals 2.7 acres and has alternatives for parking that either comply with the bylaws or require much less relief from the Regulations than the relief Applicant presently requests. Applicant himself significantly expanded his pre-existing non-conforming cottage during his conversion to a year round home by adding an attached garage that further encroaches into the front yard setback by a significant distance. The garage structure is not necessary for Applicant's use of his Property. Parking could take place outside of any structure. Alternatively, a garage structure could be located unattached and in a different location either in compliance with setback requirements or requiring much less deviation from the setback requirements.

Furthermore, granting either of the requested waivers would not conform to the municipal plan or state planning goals. Town Plan, Ch. III at 30 (Sept. 24, 2007) provides that "all roads are maintained and upgraded to be safe for not only automobile and farm traffic, but allow for pedestrian, bicycle, horses and other shared users." The Plan also states that "[n]ew structures should be sited with the greatest possible sensitivity to minimizing intrusion on neighbors and the shoreline." Id. Ch. V at 48. Applicant's garage does not show the greatest possible sensitivity to minimizing intrusion on neighbors. The large two story structure is very close to the road and several neighbors object to its intrusiveness. Ms. Munson, who owns the property on the opposite side of West Shore Drive abutting the Lidstone property to the northwest, testified that since the addition of the garage, she has experienced two near collisions with a car backing out onto West Shore Drive from the garage. One took place while Ms. Munson was driving north and the second when she was driving south. She had to stop short and during one of the events when there was another car traveling close behind her. A mail carrier testified during the trial that his vehicle while traveling on West Shore Drive had a near collision with a vehicle backing out of the garage. Mrs. Leiser, also a neighbor of the Lidstones, testified to how in her opinion the community is made up of small lakeside homes and that the added garage is a negative impact to the aesthetics of the area as the garage considerably increases the size of the Lidstone home and is right on top of West Shore Drive.

11

State planning goals provide, in pertinent part, for safe, convenient, economic, and energy efficient transportation systems that respect the integrity of the natural environment, including public transit options and paths for pedestrians and bicyclers. 24 V.S.A. § 4302(c)(4). State planning goals also promote an efficient system of public services including emergency services. 24 V.S.A. § 4302(c)(12). Because Applicant's as-built garage poses safety hazards and does not conform to the Town Plan or state planning goals, his request for a waiver must be denied. Similarly, Applicant's proposal to add windows and move West Shore Drive does not cure these deficiencies, as it would leave only 18 feet between the garage and the road's centerline with only minimal visibility improvements. The application to convert the garage into a carport remaining only 9 feet from the centerline of West Shore Drive similarly does not eliminate or significantly reduce the safety concerns resulting from the structure's close proximity to West Shore Drive. Thus, the various applications for waivers do not conform to the Town Plan or state planning goals.

As such, we conclude that Applicant's request for a waiver for the garage as-built or for either proposal to add windows to the garage and slightly relocate the road or convert the garage into a carport do not satisfy Regulation § 1104(E). Therefore, Applicant's requests for waivers of the front yard setback are **DENIED**.

**IV.  Variance from Setback Requirements for the As-built Garage** (Questions 2.a and 2.b in SOQ for Docket No. 152-9-10 Vtec)

In his Application #10-01, Applicant seeks a variance to the setback requirements for his as-built garage and asks whether any conditions may be imposed to satisfy the variance requirements. Applicant appeals the ZBA's denial of this request for a variance. Lidstone Variance/Waiver (Appl. #10-01), Docket No. 152-9-10 Vtec. Again, Applicant filed his application #10-01 with the Town on January 25, 2010, and, thus, the 2005 Regulations apply to this request. As described above, Applicant proposes to add windows to the south and north walls of the garage in close proximity to West Shore Drive as part of his variance request. Applicant suggests that windows will reduce the risks occurring when a car backs out of the garage into the roadway. The footprint of the garage is not changed by this application; however, Applicant proposes to move West Shore Drive to the west to create a setback from the garage of approximately 12 feet to the edge of the traveled way; approximately an 18 foot setback from the centerline of West Shore Drive.

Pursuant to the 2005 Regulation § 1104(A), a variance from the Town's regulatory requirements may be granted when ALL of the following five criteria are satisfied:

1. There are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship is due to these conditions and not the circumstances or conditions generally created by the provisions of these regulations in the neighborhood or district in which the property is located;

2. Because of these physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of these regulations and that the authorization of a variance to enable the reasonable use of the property;

3. The unnecessary hardship has not been created by the appellant;

4. The variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, or be detrimental to the public welfare; and

5. The variance, if authorized, will represent the minimum that will afford relief and will represent the least deviation possible from the Regulations and from the municipal plan.

There are no unique physical circumstances or conditions that require a garage to be constructed, or if constructed, to be located where Applicant placed the structure. It appears the garage has been placed in its current location for the convenience of the Applicant, and therefore, Applicant has created the need for the variance. The Property is 2.7 acres in size and has space to locate the garage so as not to violate the dimensional setback requirements for this zoning district. The lot is not irregularly shaped, and is not narrow or shallow. There are no topographical limitations. Even if it would be difficult to better locate a garage, Applicant could easily have an outside parking area resulting in greater compliance with the 2005 Regulations and with less negative impacts. Any hardship was not created by the Regulations, but rather by Applicant's designs. Thus, the Property is developable in conformance with the 2005 Regulations.

Moreover, the large and imposing size of the attached garage alters the character of the neighborhood as the replacement house and attached garage appear as one structure and are significantly larger than the pre-existing cottage and other existing homes the area. Additionally, discussed above, the garage's close proximity to West Shore Drive presents safety

13

concerns to pedestrians, bicyclists, and vehicles using West Shore Drive, and thus, the garage is detrimental to the public welfare. We therefore conclude that Applicants request for a variance does not comply with the criteria set forth in the 2005 Regulations § 1104(A).

As Applicant's request for a variance is an after-the-fact application, meaning the garage is already constructed, we conclude that there are no necessary or appropriate conditions that could be imposed to satisfy the Regulations. Therefore, Applicant's request for a variance of the front yard setback as set forth in his Application #10-01 is **DENIED**.

**V.    Applicability of Lakeshore Setback to Lakeside Covered Porch** (Questions 1 and 2 in SOQ for Docket No. 178-12-11 Vtec and Questions 1 and 2 in SOQ for Docket No. 33-3-12 Vtec)

In two matters before the Court, Applicant challenges whether the lakeside setback requirements apply to porches or similar structures and if so, whether they apply to the covered porch Applicant constructed on the lakeside of his reconstructed residence to the extent that it could be considered a pre-existing non-conformity.[4]   First, in Docket No. 178-12-11 Vtec, Applicant appeals the ZBA's denial of his application #11-02, filed with the Town on October 25, 2011. The application seeks, in part, a waiver for a covered porch attached to the lakeside section of Applicant's reconstructed residence. The ZBA denied the application in a November 17, 2011 decision. Appellant appeals that decision and raises the following two questions:

1. Do the Town of Tinmouth Zoning Bylaws require inclusion of decks, porches[,] and similar structures when considering the measurement of setbacks? Is the porch a part of the "principal building?"

2. Did appellant's pre-existing deck structure which was the same size as the existing porch constitute a pre-existing nonconforming structure that should be allowed by the Town of Tinmouth Zoning Bylaws?

(Questions 1 and 2 of Applicant's Statement of Questions at 1, filed Dec. 21, 2011).

Second, in Docket No. 33-3-12 Vtec, Applicant appeals the ZBA's February 20, 2012 decision denying a waiver and variance for a relocated West Shore Drive. This matter appears to relate to a revised application #11-02 and was numbered 11-02A. The date of filing for the revised application is unknown other than it was filed with the Town on or after October 25, 2011. Applicant raises the same two above issues in this appeal.

---

[4]  Question 3 in Applicant's SOQ for Docket No. 33-3-12 Vtec asks whether the ZBA has "jurisdiction on questions of pre-existing non-conforming structures." We answer this question below in Section VI in our discussion of Applicant's argument that the garage should be considered a pre-existing non-conformity.

As the applications raising these two issues were filed with the Town on or after October 25, 2011, we review the applications for compliance with the 2010 Regulations. The 2010 Regulation, § 1301 contains the following defined terms:

Structure: Anything constructed or erected, the use of which requires permanent location on the ground, or attachment to something located on the ground, except a wall or fence.

Yard (Setback): An open space at grade between a building and adjoining lot lines, unoccupied and unobstructed by any portion of a structure from the ground upward, except as otherwise provided herein. In measuring a yard for the purpose of determining the width of a side yard, the depth of a front yard, or the depth of a rear yard, the minimum horizontal distance between the lot line and the main building shall be used.

The porch constructed on the lakeside of the replacement home is attached to the second floor (the main floor of the house) and it is approximately 8 feet deep and 30 feet wide. The porch is supported by 4 posts and 2X6 floor joists attached to the house. The porch has a ceiling and roof. The sides of the porch are constructed as removable screens.

We first find that the porch is part of a "structure" as defined by the Regulations, as the porch is attached to something located on the ground and in a permanent location. We next find that the porch is located within the lakeshore setback. The lakeshore setback is defined, pursuant to the 2010 Regulations, as the open space between the building and the lake which is unoccupied and unobstructed by any portion of a structure from the ground upward. 2010 Regulations, Article XIII: Definitions. Included with this definition is a diagram depicting setbacks. A roofed porch is depicted as part of the building in the diagram and the porch is accounted for when considering a setback. Id.

Applicant's porch is attached to the house and is a part of it. Certainly the area where the porch is located is not unoccupied and unobstructed. Thus, we conclude that setback requirements in the 2010 Regulations apply to this porch.

The second issue raised by Applicant asks whether the porch replaces a pre-existing non-conforming structure, and therefore, the porch should be allowed to remain even if it is located within a setback area. At the heart of this issue is the question of whether the previous cottage had a deck of similar size and in a similar location, because pre-existing non-conformities may continue only to the extent that they do not increase the extent of the nonconformity. See 2005 and 2010 Regulations, Article VI. A property owner wishing to

15

enlarge a use nonconformity or expand a dimensional nonconformity must obtain ZBA approval. Id.

Applicant's Exhibit 4-1, entitled "Existing Conditions Site Plan," shows the location of the pre-existing "original cottage" with the rebuilt "new residence" overlaying the cottage. The original cottage shows roadside and lakeside porches attached to the center portion of the cottage. The southeast corner of the original cottage (the lakeside porch) coincides with the southeast corner of the as-build new residence itself. The new second floor covered porch extends an additional eight feet to the northeast, further encroaching into the lakeshore setback.

At trial, Applicant testified that sometime in 1984 he constructed a ground level deck on the lake side of the original cottage. Applicant described the deck's construction as 2X4's laid out on their side on the ground with an aspenite sheet cover and extending out from the cottage by 8 feet. Applicant said that he was not aware of zoning requirements and that he did not get a permit to build the structure. Furthermore, Applicant explained that the deck rotted away because it had lain directly on the ground. Applicant testified that he rebuilt the deck more than once. Applicant acknowledged that in 2007 the deck was not present and that he was unsure for how long the deck was not present.

Curtis Lidstone, Applicant's son, testified at trial that the deck was "nailed to the house." Curtis Lidstone also testified that he and his father repaired or replaced the deck numerous times. He also confirmed that the deck was not present when the cottage was moved in 2007.

Applicant's original application for a zoning permit to replace the cottage with a year round residence contains no mention or reference to this formerly existing deck. Furthermore, the Town's Exhibit F is a copy of the 1997 Lister's Card for the subject property which makes no reference to a lakeside deck. Pictures included with the Lister's Card show that the lakeside of the cottage was elevated off the ground raising the questions of whether a deck on the ground could have been "nailed to the house" and how such a deck could have been utilized. The Town's Exhibit L2 is a picture of the relocated cottage again showing how the lakeside of the cottage is elevated off the ground. This factual discrepancy raises serious credibility issues with Applicant's and Curtis Lidstone's testimony on this topic.

ZA Gail Faller testified that she was not aware of the existence of any lakeside ground level deck. Ms. Faller stated that the Town Lister's Cards did not include such a feature and no

16

information on such a feature was provide in Applicant's original 2007 application for a zoning permit.

Thus, based upon the credible evidence before the Court, we conclude that the cottage did not include a pre-existing non-conforming ground level deck. We reach this conclusion as Applicant has not convinced us that a ground level porch existed, and even if it did, the deck did not pre-exist the Regulations, and therefore, the deck would have required a permit. Applicant never secured a required permit upon the deck's construction in 1984 or later. Furthermore, and again even if a deck once existed, any right to rebuild it was likely abandoned when the deck was not replaced in 2007. Lastly, we point out that the "replacement" porch is much wider than any previous deck. Thus, we conclude that Applicant is not entitled to retain the lakeside porch based upon a theory of it replacing a pre-existing non-conforming structure.

## VI. Town Authority over Pre-Existing Non-Conforming Structures and Whether Applicant's Garage is a Non-Conforming Structure (Questions 3 and 5 in SOQ for Docket No. 33-3-12 Vtec)

In Docket No. 33-3-12 Vtec, Applicant raises the question of whether the 2010 Regulations confer jurisdiction on questions of pre-existing non-conforming structures to the Zoning Board of Adjustment. Applicant also asks whether his garage complies with the non-conforming structure provisions of the 2010 Regulations.

The 2010 Regulation § 608 – Expansion of a Dimensional Nonconformity, states that "[a] dimensional nonconformity of a structure may be expanded with approval of the Board of Adjustment, provided" that the expansion satisfies three criteria. Thus, the 2010 Regulations give the ZBA jurisdiction over pre-existing non-conforming structures.

Applicant appears to argue that because his cottage was a pre-existing non-conforming structure, the town, including the ZA and ZBA, must approve his garage under Article VI: Nonconformities. We disagree.

The 2010 Regulation § 608(1) states that the ZBA may approve of an expansion of a dimensional nonconformity if it "[d]oes not create a greater nuisance, detriment to the public health, safety or welfare than the existing dimensional nonconformity."

As presently configured, the garage encroaches significantly farther into the front yard setback than did the pre-existing non-conforming cottage. As addressed above, this further encroachment creates a greater detriment to public safety and welfare then the pre-existing dimensional nonconformity.

17

In an attempt to maintain his dimensional non-conformity, Applicant proposes as part of his applications #11-02 and #11-02A to shorten the as-build garage by 4 feet and relocate West Shore Drive to the west, creating a new setback of 29 feet between the western edge of the relocated West Shore Drive and the eastern side of the shortened garage. The original cottage's western corner was located 28.5 feet from the edge of West Shore Drive. Applicant therefore claims to maintain the dimensional non-conformity with the front yard setback.

Looking further into the details of Applicant's proposal, however, we conclude that the proposal overall does not maintain the dimensional non-conformity, but rather expands it. The proposal to relocate West Shore Drive includes an area between the proposed commonly traveled roadway and Applicant's garage to be reinforced with gravel for fire or emergency truck access. This reinforced area extends to within 15 feet of the shortened garage. Without this area, the Town fire chief said that the fire trucks and emergency vehicles cannot travel the new proposed road configuration. Thus, the true front yard setback is reduced to 15 feet, and the dimensional non-conformity is expanded.

Furthermore, there are detrimental public safety and welfare impacts created under this proposal. Even with a reinforced area, the fire chief could not confirm whether an emergency vehicle could travel the new configuration. The reinforced area will have to be plowed and kept free of snow for emergency vehicles. No one will police whether normal traffic uses the reinforced area. To use the reinforced area, a vehicle will have to cross over the Lidstone driveway, thereby creating an additional traffic safety concern. Additionally, the proposed relocated road would increase the radius or curvature of the road in the area at the north edge of Applicant's property close to Ms. Munson's abutting property. This reduces sight distances between West Shore Drive and Ms. Munson's driveway, making it difficult and unsafe for Ms. Munson to exit her driveway. Thus, the expansion of a dimensional non-conformity creates a greater detriment to the public safety or welfare than the pre-existing dimensional non-conformity.

We therefore conclude that Applicant's garage does not comply with the non-conforming structure provisions of the 2010 Regulations, Article VI.

18

**VII.** **Private Road Relocation** (Questions 6 and 7 in SOQ for Docket 33-3-12 Vtec)[5]

In Docket No. 33-3-12 Vtec, Applicant appeals the ZBA's February 20, 2012 decision denying a waiver and variance for a relocated West Shore Drive and shortened garage. This matter appears to relate to a revised application #11-02 and appears to be numbered #11-02A. The exact date Applicant filed the revised application is unknown; it was on or after October 25, 2011.

**a.** **Town Authority**

Applicant raises the question of whether the 2010 Regulations confer jurisdiction to any authority within the Town over the relocation of private roads, including, but not limited to, approval of the relocation by Fire Department officials. Applicant also asks whether the 2010 Regulations confer jurisdiction to any authority within the Town over the location of septic tanks, specifically, their distance from private roads.

First, with respect to the Town authority over the relocation of a private road, we look to 2010 Regulation § 1102 – Zoning Permits. In Tinmouth, no "land development" shall be commenced until a zoning permit has been issued by the ZA. 2010 Regulation § 1102(A)(1). "Land Development" means, in pertinent part, any change in the use of land or extension of use of land. 2010 Regulation § 1102(A)(2). Moving a private road, especially a private road that provides the only land-based means of accessing more than two dozen other private properties, from one area of a lot to another area of a lot, and including earth work and adding fill or other materials, meets the definition of land development. See In re Shantee Point, Inc., 174 Vt. 248, 256 (2002) (finding that the relocation of a private road constituted a change in the use of land, and is thus "land development" under 24 V.S.A. § 4303).[6]

Applicant also raises concerns of the Town's review of the location of the relocated road and the fire chief's testimony regarding the proposed road relocation. In these related matters, the Town's (and thus, this Court's)[7] review of the proposal to relocate the road is part of our

---

[5] It is important to note that, although this Court may review projects for compliance with applicable regulations, we do not have jurisdiction to adjudicate private property rights, including right of way easements. See, e.g., In re Frantz Wastewater & Water Supply Permit, No. 173-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Jan. 19, 2011) (Walsh, J.).

[6] While Shantee Point involves the statutory definition of "land development," id., this definition is identical to the 2010 Regulation definition of "land development."

[7] A court conducting a de novo review of a local development review board or zoning board decision stands in the place of that decision-making body and possess the same authority. In re Torres, 154 Vt. 233, 235 (1990).

consideration of the applications for either a waiver of or variance from the required front yard setback. Thus, our review focuses on consideration of the criteria within the 2010 Regulations § 1105(A) and (D) relating to variance and waiver. As discussed above, public safety and welfare are included within variance and waiver review criteria, and therefore, a fire chief's testimony is relevant to this review.

Next we consider the Town's jurisdiction over the location of septic tanks, specifically, their distance to private roads. While the jurisdiction over permitting and regulating waste water systems lies with the State, the Town may consider public welfare impacts under the 2010 Regulations' variance and waiver provisions. In our review of these matters, we are not simply reviewing an isolated issue of the distance between the relocated road and an existing septic tank. Rather, Applicant is requesting a variance or waiver of setback requirements relating to his proposal to relocate West Shore Drive. Again, our review focuses on consideration of Applicant's request to relocate West Shore Drive where the edge of the traveled way will abut the underground septic tank. This proposal has apparent potential negative public welfare impacts in that a vehicle could travel off the roadway and over the tank, compromising the tank's integrity. A leaking septic tank could have adverse public health and welfare impacts. Thus, we conclude that the Town, and this Court, may consider the location of a septic tank in relation to a relocated roadway as part of an application of a variance or waiver of the Town's regulations.

### b.     Waiver and Variance for Road Relocation

Applicant's request for a waiver of the front yard setback associated with his proposal to relocate West Shore Drive and shorten his as-built garage (#11-02 and #11-02A) does not fulfill the requirements for a waiver as articulated above. Currently the as-built unpermitted garage is 9 feet from the centerline of West Shore Drive while the 2010 Regulations require a setback of 50 feet from the centerline of West Shore Drive. This significant setback violation results from Applicant's expansion of his pre-existing non-conforming structure. Applicant proposes the significant undertaking of relocating West Shore Drive and shortening his garage in an attempt to maintain the former setback associated with the pre-existing non-conforming cottage. This proposal raises new or increased concerns about insufficient sight distances along West Shore Drive, difficulty with a neighbor's ingress and egress from her driveway, and the very close proximity of the relocated road to an existing septic tank. Applicant's proposal and request for

20

a variance exacerbates safety issues and presents difficulties for emergency vehicle access within an already confined lakeside neighborhood. Thus, we conclude that Applicant's request for a waiver of the front yard setback does not comply with the 2010 Regulations.

Variance criteria within the 2010 Regulations are identical to the variance criteria within the 2005 Regulations. See 2005 Regulations §1104(A) and 2010 Regulation §1105(A). Above, we analyze how Applicant's request for a variance in his application #10-01 does not comply with the criteria set forth in the 2005 Regulations § 1104(A). For the same reasons articulated above, we conclude that Applicant's requests for a variance in his applications #11-02 and #11-02A do not comply with the criteria set forth in the 2010 Regulations § 1105(A).

### VIII.     Violation and Enforcement (Questions 1 and 2 in SOQ for Docket No. 212-12-10 Vtec)

Docket No. 212-12-10 Vtec involves an appeal of an October 26, 2010 Notice of Violation (NOV) that the ZA issued against Applicant relating to Applicant's construction of the unpermitted attached garage within the front yard setback. The NOV also raised the compliance issue of Applicant constructing a two story house while his zoning permit allowed for a one and one-half story house and the fact that Applicant relocated his former cottage to an unpermitted location. These later two issues have been corrected. Thus, we focus on the garage and its setback from West Shore Drive.

Applicant raises the following two issues in this matter:

1. Should the Environmental Court stay the effectiveness of the Notice of Violation of the town of Tinmouth Administrative Officer dated October 26, 2010, including any and all requested remedial action and fines, in accordance with VRE[C]P 5(c)?

2. Was the issuance of the aforesaid Notice of Violation premature in light of the existing appeals pending in the Environmental Court regarding the underlying permits[?] The docket numbers of the existing appeals are 152-9-10 Vtec and 130-8-10 Vtec.

(Questions 1 and 2 of Applicant's Statement of Questions at 1, filed Jan. 4, 2011).

In a February 7, 2011 Entry Order, this Court granted Applicant's motion to stay the demolition of the already constructed unpermitted garage until further order of this Court. This same Entry Order denied Applicant's motion to stay the accrual of fines. The entry order further noted that the daily amount of penalty, if any, would be determined on the merits of these proceedings if Applicant was determined to have committed a violation.

21

Applicant also challenges the NOV asserting that issuing the NOV was premature because Applicant was seeking after-the-fact approval of the garage through a series of applications filed with the Town. We do not agree with Applicant's assertion that the NOV was premature. Applicant built his attached garage without approval to do so. Thus, Applicant was and is in violation of the Regulations and as such, issuance of the NOV was not premature. In fact, 10 V.S.A. § 4451 requires a municipality that wishes to pursue enforcement, including penalties, against a violator to first provide the violator with written notice including seven days' advance warning of a possible enforcement action. We conclude that even though Applicant was pursuing approval for his garage, his pursuit of approval was subsequent to his unpermitted construction of the garage, and therefore, the Town's NOV was not premature.

Docket No. 10-1-11 Vtec is the Town's complaint for enforcement pursuant to 24 V.S.A. §§ 4451, 4452, and 4470(b) against Applicant. The Town seeks a permanent injunction against Applicant from using or occupying the attached garage. The Town also seeks an order finding the attached garage to be unpermitted land development in violation of setback restrictions. Should the Court reach these conclusions, the Town requests an order that Applicant remove the attached garage resulting in a remaining structure complying with amended Zoning Permit 07-12: a two story structure which is 40 feet by 30 feet. Lastly, the Town requests an award of daily fines and penalties commencing November 5, 2010 and an award of attorney's fees.

Applicant constructed his attached garage without the necessary zoning permit. In Tinmouth, no "land development" shall be commenced until a zoning permit has been issued by the ZA. 2010 Regulation § 1102(A)(1). "Land Development" means, in pertinent part, the construction or enlargement of any building or structure. 2010 Regulation § 1102(A)(2). Applicant's zoning permit #07-12 authorized Applicant's replacement home, but it did not authorize the garage. Thus, Applicant's construction of his attached garage is a violation of the 2005 and 2010 Regulations.

Applicant has attempted to cure his violation by applying for an after-the-fact zoning permit. Through a series of applications, Applicant has sought approval of his as-built garage. Due to the garage's violation of the setback restrictions, all applications have been denied.

The Town seeks an injunction against Applicant prohibiting use or occupancy of the garage and an order that the garage be removed. When the administrative officer of a municipality seeks a permanent injunction, the Court asks:

22

1) whether the violation is substantial, and

2) whether the landowner's violation is innocent or involves conscious wrongdoing.

See Town of Shelburne v. Carpenter, 155 Vt. 126, 131–32 (1990). The municipality does not have to show irreparable harm or the lack of an adequate alternative remedy to obtain a permanent injunction; the showing of a violation is sufficient. Id. at 129.

In these coordinated matters, the violation is substantial. The issue of whether the violation is substantial entails the difficult weighing of the public injury against the private loss. The Vermont Supreme Court has noted that there comes a point where the violation is so insubstantial that it would be unjust and inequitable to require the removal of an offending structure through a mandatory injunction. See id. at 131. Applicant's construction of his two story attached garage within 9 feet of the centerline of West Shore Drive is not "so insubstantial." The required setback is 50 feet from the centerline of the road, and thus, the garage's 41 foot encroachment is substantial. Even if we consider the pre-existing cottage's setback of 28.5 feet, the additional encroachment of the garage is a substantial 19.5 feet. See id. at 132 (stating that an additional encroachment of a few inches might well not be substantial.)

In reviewing whether the violation is innocent or conscious wrongdoing, courts have generally found that a conscious decision to go forward, in the face of a direction not to from the regulatory body, is not innocent. Id. at 132. In these coordinated matters, Applicant argued that the ZA gave him verbal approval to build his attached garage and that he justifiably relied upon it. Applicant previously raised this argument in his appeal of a 2008 NOV to the ZBA. In its January 15, 2009 decision, the ZBA concluded that Applicant violated his 2007 zoning permit by constructing his attached garage and denied Applicant's appeal of the NOV. Applicant did not appeal the ZBA's January 2009 decision, and as concluded above, that decision is now final and binding. Thus, the possibility of an innocent violation is significantly diminished, if not eliminated.

Additionally, Applicant has filed a series of four applications with the Town attempting to secure an after-the-fact approval of the garage. All of these applications have been unsuccessful, in part because of the significant issues presented by the garage's encroachment upon West Shore Drive. 24 V.S.A. § 4452 provides that if any construction violates a bylaw, the "administrative officer shall institute . . . any appropriate action, injunction, or other proceeding to prevent, restrain, correct, or abate that construction or use, or to prevent, in or about those

23

premises, any act, conduct, business, or use constituting a violation." (emphasis added). Thus, we **GRANT** the Town an injunction and **ORDER** that Applicant immediately cease any use or occupation of the garage, and further **ORDER** that Applicant remove the attached garage, resulting in a remaining structure complying with amended Zoning Permit 07-12.

We now turn to the Town's request to assess penalties against Applicant for his violation. Vermont municipalities are authorized to demand that a violator pay a fine each day the violation continues. 24 V.S.A. § 4451(a). The municipality is required to give prior notice and an opportunity to cure of "at least seven days' warning notice by certified mail." Id. This Court is charged with determining what level of fine should be assessed against the zoning violator. Id.

Section 4451(a) provides us with some parameters for an appropriate penalty by establishing that this Court may impose a penalty of "not more than $100.00 per day for each offense."[8] We have held that this provision implies that "we reserve a fine of $100.00 per day for the most egregious of zoning infractions." In re Huntington NOV Appeal and Town of Bradford v. Huntington, Nos. 204-8-06 Vtec and 209-9-06 Vtec, slip op. at 8 (Vt. Envtl. Ct. Mar. 18, 2008) (Durkin, J.); see also Town of Hinesburg v. Dunkling, 167 Vt. 514 (1998). Fines authorized by 24 V.S.A § 4451(a) are civil in nature; they must not be punitive and they must be "rationally related to the damages suffered from landowner's violation of [the] Town's bylaw." Id. at 528. It is clear that the Town has incurred considerable expense, including expenditures for both legal services and staff time and resources, to compel Applicant's compliance, and that Applicant's continued non-compliance puts neighboring properties and people at some safety risks.

Therefore, even in light of the injunctive relief we are imposing against Applicant, we conclude that in this instance a fine of $12.00 per day is appropriate. The October 26, 2010 NOV was served on October 27. The seven day cure period expired on or about November 3, 2010. The Town requests an award of daily fines and penalties commencing November 5, 2010. We calculate a total of 775 days between November 5, 2010 and today. Thus, we assess a total fine against Applicant as a consequence of his violation, and the violation as represented in the October 2010 NOV, of $9,300.00. This fine assessment will at least partially reimburse the Town

---

[8] In 2011, this provision was amended by increasing the fine to $200.00 for each day of violation.

for what Appellant caused the Town and its officers to expend in public monies, time, and effort in response to the violation.

## Conclusion

For the reasons discussed above, we conclude that

1.  Philip Lidstone's waiver and variance applications #10-01, #10-04, #11-02, and #11-02A are **DENIED**.

2.  Applicant's construction of his attached garage without Town approval is a violation of the 2005 and 2010 Regulations. The October 26, 2010 Notice of Violation is **AFFIRMED**.

3.  We **GRANT** the Town an injunction and **ORDER** that Applicant immediately cease any use or occupation of the garage. We further **ORDER** that Applicant remove the garage resulting in a remaining structure complying with amended Zoning Permit 07-12.

4.  As a consequence of committing the violation evidenced by the 2010 notice of violation, Philip Lidstone shall pay to the Town of Tinmouth penalties in the total amount of $9,300.00.

We note that Applicant's lakeside porch, as well as the northside elevated walkway and deck, remain unpermitted. The Town has yet to initiate an enforcement action seeking injunctive relief and penalties relating to these features, and therefore, we have not considered such relief and penalties.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Done at Berlin, Vermont, this 19th day of December, 2012.

_____
Thomas G. Walsh, Environmental Judge